Alan **MULARKEY, et al., Plaintiffs,**

v.

**HOLSUM BAKERY, INC., et al., Defendants.**

No. CIV 87–780 PHX–CAM.

United States District Court, D. Arizona.

April 13, 1988.

Allen, Kimerer & LaVelle, Michael J. La-Velle, Sarah McGiffert, Phoenix, Ariz., for plaintiffs.

Brown & Bain, T. David Copley, Charles Steven Price, Robert E.B. Allen, Phoenix, Ariz., for defendants.

## ORDER

MUECKE, District Judge.

### BACKGROUND

Alan and Lynn Mularkey asserted this antitrust action against Holsum Bakery, Inc. on May 21, 1987. The Mularkeys are former distributors of Holsum bakery products. They allege that Holsum violated Sections One and Two of the Sherman Act and various other laws by engaging in a conspiracy to fix prices and monopolize. *See* 15 U.S.C. Sections 1 and 2. The Mularkeys have styled their complaint a class action on behalf of themselves and all other similarly situated Holsum distributors in the past, present and future. They seek both damages and injunctive relief. Accordingly, pursuant to Rule 23(c)(1) Fed.R. Civ.P., the Mularkeys have moved this Court to determine that the action may proceed on behalf of the entire class in accordance with Rule 23(b)(3). The relevant facts follow.[1]

### FACTS

Holsum radically altered its product distribution system in October, 1983. Rather than having traditional employees deliver its goods in urban areas as in the past, Holsum elected to procure independent contractors to distribute its products. The independent contractors ("distributors") purchased bakery goods directly from Holsum

---

1. "[I]n determining whether to certify [a] class, the district court is bound to take the substantive allegations of the complaint as true ... [and then] consider the nature and range of proof necessary to establish those allegations." *In re Coordinated Pretrial Proceedings,* 691 F.2d 1335, 1342 (CA9 1982) (citations omitted). Because the district court is to determine whether to certify "as *soon* as practicable after the com- mencement of [the] action," Rule 23(c)(1) Fed. R.Civ.P. (emphasis added), "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify wrong, is a basis for declining to certify a class which apparently satisfies the Rule." *Blackie v. Barrack,* 524 F.2d 891, 901 (CA9 1975).

and then sold the goods to retailers in designated geographic areas.

The distributors serviced both "chain accounts" and "cash accounts." Chain accounts involved large chain retailers of bakery products, such as Safeway, Basha's, 7–11 and others. In reference to chain accounts, Holsum contracted directly with each chain retailer regarding the variety, quantity and price of the bakery goods that the particular retailer desired to purchase. The distributors were not parties to the agreements. In contrast, cash accounts involved retailers of much smaller scale, the local "mom and pop" corner market. In cash accounts, Holsum did not contract directly with the particular retailer and presumably the distributors retained the right to negotiate prices with the retailer subject only to ordinary market restraints.

The distribution contracts between Holsum and the distributors did not restrict Holsum's right to determine the price at which it sold its products to the distributors. Moreover, notwithstanding Holsum's contracts with the chain retailers, the agreements did *not* require that the distributors sell the products at a particular price to the chain retailers. Nonetheless, the Mularkeys contend that Holsum and a group of unnamed co-conspirators executed agreements which set the price at which the co-conspirators would purchase Holsum products from the distributors. The Mularkeys further allege that Holsum threatened to terminate the distribution rights of any distributor who failed to sell at the predetermined price. The Mularkeys argue that Holsum's actions violated the antitrust laws and have injured the distributors as a class.

Holsum's Response to the Mularkeys' Motion to Certify the Class argues that because common issues of fact and law do not predominate within the class and the

Mularkeys do not adequately represent the interests of the prospective class as a whole, the Mularkey's Motion should be denied.

The arguments are evaluated below.

## ANALYSIS

Rule 23 governs class actions in federal court. The Rule is "construed liberally to permit class actions." *In re Cement & Concrete Litigation*, 27 Fed.R.Serv.2d (Callaghan) 1334, 1338 (D.Ariz.1979).[2] If a prospective class satisfies the requirements of Rule 23, the court, in its discretion, may certify that the matter proceed as a class action. Rule 23(c)(1) Fed.R.Civ.P.[3] Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties if and only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b) sets forth three types of class actions subject to certification. In this lawsuit, both litigants agree that if this matter is to be maintained as a class action, it should proceed pursuant to 23(b)(3). Rule 23(b)(3) states that if the four requirements of 23(a) are satisfied, the class may be certified *if* the court *also* finds that 1) the questions of law or fact common to the class predominate over any questions affecting only individual class members, and 2) a class action provides the best vehicle for a fair and efficient adjudication of the controversy. *See* Rule 23(b)(3) Fed.R.Civ. P.

Holsum correctly concedes that the Mularkeys have fulfilled all but two of Rule

---

**2.** *See also Esplin v. Hirschi*, 402 F.2d 94, 99 (CA10 1968), *cert. denied*, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (CA2 1968), and *Escott v. Barchris Construction Corp.*, 340 F.2d 731, 733 (CA2 1965), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1966); 3B Moore and Kennedy, *Moore's Federal Practice* 23.02[4]

(1987) ("Rule 23 is a remedial rule to be liberally construed and applied.").

**3.** *See, In re "Agent Orange" Product Liability Litigation*, 603 F.Supp. 239, 242 (E.D.N.Y.1985) ("whether to certify a class is a decision peculiarly within the discretion of the trial judge").

23's requirements. As to the remaining two, Holsum argues that the Mularkeys cannot satisfy 23(a)(4)'s adequate representation requirement and 23(b)(3)'s predominating question requirement. Each argument is discussed separately.

A. Are the Mularkeys adequate class representatives?

■ Rule 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." Rule 23(a)(4) Fed.R.Civ.P. In order to satisfy that requirement, the prospective class representative must demonstrate that 1) he has no conflict of interest with the prospective class, and 2) he will vigorously prosecute the case. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (CA2 1968). Accordingly, Holsum first argues that the Mularkeys are inadequate class representatives because they are *former* Holsum distributors seeking to represent past, present and future distributors. As former distributors, the Mularkeys have no concern for the present and future economic well-being of Holsum, Inc. In contrast, present and future distributors have an interest in Holsum's continuing financial vitality because if Holsum's economic resources are undermined, their distributorships are undermined in turn. Thus, a potential conflict between former distributors and present and future distributors could lead to disagreements as to remedies in the event that liability is established.

■ Holsum's argument is sound. It does not counsel this Court not to certify the class, however. It merely advises the Court to certify a class of past and present distributors only as to the question of liability. *E.g. Jacobi v. Bache & Co., Inc.*, 16 Fed.R.Serv.2d (Callaghan) 71 (S.D.N.Y. 1971). If the Mularkeys desire to obtain damages or equitable relief on behalf of present and future distributors, a present distributor must join the class as a class representative. *See* Rule 23(d)(2) Fed.R. Civ.P., and *Kramer v. Gold Medal Bakeries*, 1973–1 Trade Cas (CCH) 74,543 (E.D. Pa.1973).

■ Holsum next argues that Lynn Mularkey is an inadequate representative for the class because she is presently employed by a competitor of Holsum Bakery, Inc., namely the Orowheat Corporation. However, her employment with Orowheat in no way implicates her ability to fairly represent the interests of distributors as to liability because the question of liability is completely unrelated to the competitive relationship of Holsum and Orowheat. The only conceivable conflict regarding liability that Ms. Mularkey and the other distributors could have is whether to attempt to hold Holsum liable in the first place. But that conflict is not resolved in reference to class certification. Rather, if certain distributors desire not to prosecute this action, they may elect to opt out pursuant to Rule 23(c)(2)(A). 3B Moore and Kennedy, *Moore's Federal Practice* 23.07[3] (1987).[4] Thus, because Ms. Mularkey will not represent present and future Holsum distributors as to remedies, her current employment status is irrelevant. *E.g. Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R. D. 519, 533 (S.D.N.Y.1972).

■ Finally, Holsum argues that Alan Mularkey is an inadequate class representative because he has expressed a "studied disregard of his legal obligations." "Fair and adequate representation requires that the representatives themselves bear a character that assures vigorous prosecution of the action." *Pashek v. Arizona Board of Regents*, 82 F.R.D. 62 (D.Ariz.1979). Because Mr. Mularkey has allegedly 1) been sued for fraud by Holsum, 2) plead guilty to the federal offense of aiding and abetting theft by a bank employee, 3) failed to file his most recent income tax returns, and lastly, 4) failed to pay state sales tax on his

---

**4.** As Judge Weinstein has noted in a related context, "[i]n any substantial class action there is always the possibility ... [of class conflict]. But such differences do not preclude a class action. To some degree ... the matter is handled by permitting individual members of the class to be excluded [pursuant] to Rule 23(c)(2)." *Rosado v. Wyman*, 322 F.Supp. 1173, 1194 (E.D.N.Y.1970), *aff'd*, 437 F.2d 619 (C.A.2 1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971).

business for over two years, Holsum argues that Mularkey is an inadequate class representative.

The truth of Holsum's allegations is only marginally related to a more relevant question: will Mr. Mularkey vigorously represent the interests of the class? The fact that he suffered the expense and risk of filing this lawsuit in the first place is some indication that he will prove to be a "vigorous prosecutor." His lawyer is a responsible advocate. Up to now, he has prosecuted this matter aggressively. This Court will not assume Mularkey's bad faith or inadequacy as a class representative at the onset. If he proves wanting in the future, he can be decertified as a class representative at that time.

Moreover, and perhaps more importantly, this Court has a duty and desire to insure that the unnamed class members will be fairly represented. *See* Rule 23(e) Fed.R.Civ.P. *and* 7B Wright, Miller and Kane, *Federal Practice and Procedure* pp. 340–341 (1986). With all the flexibility Rule 23 provides, this Court can virtually guarantee vigorous representation. Thus, Holsum's fears of inadequate representation are illusory and self-serving.

Accordingly, this Court concludes that the Mularkeys will provide fair and adequate representation to the plaintiff class of former and present Holsum distributors as to liability. However, the Mularkeys cannot represent the class of present and future distributors as to remedies. If the remedial claims of present and future distributors are to be asserted in this action, a present distributor must intervene as a class representative.

**B. Is there a predominating class issue?**

■ Holsum argues that because each prospective class member must *individually* prove that Holsum coerced him into adhering to Holsum's suggested prices, no common issue of law or fact predominates within the class. As a general rule, liability must be capable of class wide determination in order for a 23(b)(3) class to be certified, otherwise no class based issue predominates individual issues. *See In re*

*Coordinated Pretrial Proceedings,* 691 F.2d 1335, 1343 (CA9 1982), *and Hewitt v. Joyce Beverages of Wisconsin, Inc.,* 721 F.2d 625, 627 (CA7 1983). Holsum's argument neglects an essential allegation of the Mularkey's complaint, however. The Mularkeys have alleged that Holsum has *conspired* to fix prices and monopolize. A conspiracy to fix prices and monopolize would violate the antitrust laws regardless of any coercion to adhere to a particular price. Because the question of conspiracy can be resolved on a class wide basis, a question common to the class predominates over any individual issues. *See Rios v. Marshall,* 100 F.R.D. 395, 407 (S.D.N.Y. 1983); *In re Cement & Concrete Antitrust Litigation,* 27 Fed.R.Serv.2d (Callaghan) 1334, 1337 (D.Ariz.1979); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566 (CA2 1968) and 7B Wright, Miller and Kane, *Federal Practice and Procedure* pp. 4–5 (1986).

■ Moreover, notwithstanding the allegations of conspiracy, the Mularkeys are still entitled to class certification. The fact that Holsum executed agreements with chain retailers establishing prices suggests that Holsum may have a common mechanism of insuring that distributors will in fact adhere to the set price. That mechanism may violate the antitrust laws regardless of conspiracy. Such a mechanism is likely to be susceptible to class wide proof and thus certification is appropriate. Even if some need for individual proof remains, class certification is nonetheless warranted. In fact, 23(b)(3) class actions have been successfully employed in cases where individual questions of liability were far more pronounced than in this case.

In *Blackie v. Barrack,* 524 F.2d 891, 902 (CA9 1975), for example, the court approved certification of a 23(b)(3) class asserting various securities fraud claims despite the fact that the alleged misrepresentations were contained in a series of different documents issued at different times under different conditions to different people. The court reasoned that the class had "a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not de-

feated by slight differences in class members' positions, and that the issue [would] profitably be tried in one suit." *Id.* Thus, questions of individual liability do not automatically preclude class certification.[5]

■ Admittedly *Blackie* is not an antitrust case. But that is irrelevant. There is no special rule governing class certification in antitrust cases in general or vertical price fixing cases in particular. To the contrary, the dispositive question in any class action is not the underlying substantive law, but the number of similarly injured parties. The answer to that question informs the determination of whether a single forum will provide economies of scale, uniformity of result and fairness. If efficiency and fairness are advanced, the class will proceed. *See* Notes of the Advisory Committee on Civil Rules, 1966 amendment, Subdivision (b)(3), 39 F.R.D. 98, 102–103 (1966).[6]

Accordingly, having considered "the nature and range of proof necessary to establish [the Mularkey's] allegations," *In re Coordinated Pretrial Proceedings*, 691 F.2d at 1342, it is obvious that this relatively simple antitrust action will most efficiently proceed within the confines of Rule 23(b)(3). If at some future juncture, this matter threatens to disintegrate into a series of mini-trials, the Court is free to consider decertifying the class. *See* Rule 23(c)(2). At this time such speculation is idle.

Based on the foregoing, this Court grants the Mularkeys' Motion in part and denies the Motion in part. In order to facilitate the speedy resolution of this action, moreover, the litigants shall submit a comprehensive discovery and motion schedule by May 2, 1988. This schedule shall

not be modified absent this Court's approval.

IT IS SO ORDERED.

---

**5.** For more poignant example, see *In re "Agent Orange" Product Liability Litigation*, 100 F.R.D. 718, 721–724 (E.D.N.Y.1983) (plaintiff class of veterans, their spouses, and their children asserting toxic tort claims against multiple defendants is certified despite the fact that the plaintiffs suffered different injuries caused by different defendants using different formulas of the toxin at different times under different conditions).

**6.** *See also* Rule 1 Fed.R.Civ.P., ("[The Rules] shall be construed to secure the just, speedy, and inexpensive determination of every action."), and A. Miller, *An Overview of Federal Class Actions: Past, Present, and Future*, 49 (2d ed. Federal Judicial Center 1976) ("The key [in determining whether a class wide issue predominates] should be whether the efficiency and economy of common adjudication outweigh the difficulties and complexity of individual treatment of class member claims.")